COUNXEL
2222 South Dobson Road, Suite 1104
Mesa, Arizona 85202
Office: (480) 536-6122
www.counxel.com
**For Court Use Only: docketing@counxel.com**
Timothy F. Coons (031208)
TCoons@counxel.com
Aaron Ludwig (018841)
aludwig@counxel.com
Cameron Mitchell (035735)
CMitchell@counxel.com
Andrew N. Morrow (039325)
AMorrow@counxel.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **LAWRENCE LUCKY**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**THE WARTBURG WATCH**, an unincorporated association, **DARLENE PARSONS**, an individual, **WANDA MARTIN**, an individual, and **TODD WILHELM**, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Lawrence Lucky ("Lucky"), by and through undersigned counsel, Andrew N. Morrow of Counxel Legal Firm, states as follows in support of his Complaint against Defendants, The Wartburg Watch, Darlene Parsons, Wanda Martin, and Todd Wilhelm:

**PARTIES, JURISDICTION, AND VENUE**

1. Lucky is an individual and a citizen of the State of Missouri.

2. Upon information and belief, Defendant, The Wartburg Watch ("Wartburg Watch") is an unincorporated association that conducts an online presence and, more

COUNXEL LEGAL FIRM

specifically a "blog", from the State of North Carolina, has a principal place of business in the State of North Carolina, and is a citizen of the State of North Carolina.

3. Upon information and belief, Defendant Darlene Parsons ("Parsons") is an individual, a citizen of the State of North Carolina, and co-founder and/or operator of Wartburg Watch.

4. Upon information and belief, Defendant Wanda Martin ("Martin") is an individual, a citizen of the State of North Carolina, and co-founder and/or operator of Wartburg Watch.

5. Upon information and belief, Defendant Todd Wilhelm ("Wilhelm") is an individual, a citizen of the State of Arizona, and a reporter, contributor, and/or author for Wartburg Watch.

6. This Court has personal jurisdiction over Wilhelm because he is a resident of the State of Arizona. Further, Wilhelm received cease and desist letters from an Arizona attorney on behalf of Lucky, at Wilhelm's Arizona address, connecting Wilhelm's conduct as alleged in this Complaint to this forum.

7. This Court has personal jurisdiction over Wartburg Watch, Parsons, and Martin because they conduct an online presence and, more specifically a "blog", that is accessible to and viewed by individuals in Arizona and, further, published the defamatory article on the blog that specifically targeted Lucky, whose reputation could foreseeably be harmed in Arizona, and intentionally directed their activities towards this forum. Wartburg Watch, Parsons, and Martin therefore have sufficient minimum contacts with this forum for purposes of this Court exercising personal jurisdiction over them.

8. Lucky's cease-and-desist letters to Wilhelm further demonstrate Defendants' awareness of the effect of their unlawful activities in this forum.

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) (diversity of citizenship) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

COUNXEL LEGAL FIRM

10. This Court is a proper venue under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and, further, Defendants are subject to personal jurisdiction in this judicial district.

11. At all relevant times, Defendants acted within the scope of their operation of Wartburg Watch, individually, and/or jointly in the publication and dissemination of the defamatory statements alleged in this Complaint.

## GENERAL ALLEGATIONS

12. Lucky incorporates all previous allegations as if fully rewritten herein.

13. Lucky is the owner of Scriptones, LLC and American Joe Coffee, two businesses based in Kansas City, Missouri. Lucky is also an inventor with two issued patents.

14. Between 2008 and 2010, Lucky held a paid staff position with the International House of Prayer, Kansas City ("IHOPKC"), related to information technology and music, and also volunteered with youth ministries.

15. In February 2010, Lucky voluntarily left IHOPKC to accept new employment as a recording engineer and production manager for a record label.

16. Wartburg Watch's blog purports to offer commentary and news on various religious and social topics.

17. Defendants, through Wartberg Watch, hold themselves out as a source of "armchair investigative journalists" who "hawkishly cover any credible allegation" of abuse. Wartberg Watch's blog bolsters its posts with materials such as "court records, police reports, video clips of pastors' sermons, and emails", a methodology that is inconsistent with a platform of subjective commentary. Parsons has also stated that she "never lie[s] when [she's] writing these blogs" and is "dead serious about what [she] write[s]", reinforcing the intent to present factual information to the public.

18. Recently, Parsons, identified as the "well-known author of The Wartburg Watch", offered Wilhelm a writing opportunity on Wartburg Watch's blog, which he accepted, stating that his future articles would be found at Wartburg Watch's blog. Wilhelm



COUNXEL LEGAL FIRM

publicly thanked "Dee and Deb of the Wartburg Watch" for telling his story and encouraging him to write. These facts establish an ongoing collaborative relationship between Defendants and demonstrate that Wilhelm, at all relevant times, was acting as an agent of and/or within the scope of his employment or association with Wartburg Watch, Parsons, and Martin, when publishing and disseminating the defamatory statements alleged in this Complaint.

19. On or about August 23, 2024, Defendants, through Wartburg Watch, published a false and defamatory article titled, "Former IHOPKC Musician Larry Lucky Has Larger Issues to Worry About than a Tik Tok Video Alleging Nefarious Deeds", and subsequently published a supplemental article(s) about the same topic ("the Article").

20. Upon information and belief, Wilhelm was the reporter and/or author of the Article.

21. The Article was widely disseminated on the internet and was accessible to and viewed by individuals in Arizona, including Lucky's colleagues, clients, friends, and family members.

22. In the Article, Defendants made the following false and defamatory statement of fact concerning Lucky and the cease-and-desist letters he authorized to be sent to Wilhelm: "I have reason to believe these letters were not written by Beau Citron of the Citron Law Group. When researching this matter I found that pretending to be a lawyer to scare someone into compliance can be subject to both criminal and civil penalties."

23. Although the Article phrases the statement as a belief, the statement is a verifiable assertion of fact or, at minimum, implies underlying false and defamatory facts. It falsely asserts that Lucky engaged in the criminal acts of forgery and/or impersonating a lawyer. The statement is not a pure opinion, as its truth or falsity can be objectively determined by inquiring with Beau Citron. The explicit reference to "criminal and civil penalties" further conveys to the average reader that Wilhelm is accusing Lucky of concrete, unlawful conduct, not merely expressing a subjective viewpoint.

24. Wilhelm publicly portrays himself as a "truth teller" who engages in

COUNXEL LEGAL FIRM

"research" and "expos[es] evil" and "darkness among evangelical elites". His work is described as covering "many ground breaking stories that others in the mainstream evangelical press were afraid to cover". This self-proclaimed role as an investigative reporter, rather than a mere commentator, leads a reasonable reader to interpret his statements as factual assertions based on diligent inquiry, not subjective opinion or hyperbole. Therefore, his statement regarding the authenticity of the cease-and-desist letters, coupled with the explicit reference to criminal penalties, is clearly presented as a factual statement of unlawful conduct.

25. Defendants' false and defamatory statement accusing Lucky of forging an attorney's letter, impersonating an attorney, or any criminal conduct related to such activities, is entirely false.

26. Beau Citron is in fact a licensed and practicing attorney in Arizona, who personally authored and sent the cease-and-desist letters on behalf of Lucky to Wilhelm at Wilhelm's Arizona address.

27. Significantly, when directly asked in the comments section of the Article to substantiate his claims regarding the authenticity of the cease-and-desist letters, Wilhelm refused, stating, "I believe it would be in my best interest to not state my reasons at this time." This refusal to provide a factual basis for his defamatory statement, combined with the verifiable falsity of the statement, demonstrates his reckless disregard for the truth of his published claims, further negating any defense of "protected opinion."

28. Wilhelm's refusal is particularly egregious given his public persona as a "truth teller" committed to "exposing evil" through "research". His failure to provide any substantiation for such a serious accusation, despite his stated dedication to uncovering truth, constitutes a "highly unreasonable, even extreme, deviation from normal standards of research and/or reporting", thereby demonstrating actual malice.

29. Defendants' awareness of the legal standard for proving defamation, as evidenced by Parsons's statements about having to prove she "lied, and I knowingly lied in order to cause malicious harm" further demonstrates an intent to write within the bounds

COUNXEL LEGAL FIRM

COUNXEL LEGAL FIRM

of factual accuracy rather than simply expressing an opinion. This understanding of the legal standard for defamation further negates any defense that the content is simply protected opinion.

30. Defendants published the Article knowing it to be false, or with reckless disregard for its truth or falsity, demonstrating actual malice.

31. Defendants failed to conduct any reasonable investigation into the truth of the statements in the Article and/or intentionally misrepresented facts.

32. The false and defamatory statement was "of and concerning" Lucky and was understood by readers, including those in Arizona, to refer to Lucky.

**COUNT I: DEFAMATION**

33. Lucky incorporates all previous allegations as if fully rewritten herein.

34. Defendants published false and defamatory statements of fact concerning Lucky to third parties.

35. Defendants acted with actual malice, meaning they published the statements either with knowledge of their falsity or with reckless disregard for their truth or falsity.

36. The statement made by Defendants is defamatory per se under Arizona law because it falsely imputes to Lucky the commission of serious criminal offenses involving moral turpitude (e.g., forgery, impersonating a lawyer) and/or accuses him of unfitness for the proper conduct of his lawful business, trade, or profession (e.g., implying fraudulent legal actions related to his businesses).

37. The statement's verifiable nature and its imputation of specific criminal conduct render it a statement of fact, not protected opinion.

38. As the statement constitutes defamation per se, damages to Lucky's reputation are presumed, and Lucky is not required to prove specific pecuniary loss.

39. As a direct and proximate result of Defendants' false and defamatory statement regarding the forgery and impersonation of a lawyer, Lucky has suffered and continues to suffer significant harm to his reputation, standing in the community, emotional distress, humiliation, embarrassment, and professional damage, for which he is entitled to

compensatory damages in an amount in excess of $75,000.00.

40. These damages are distinct from any damages sought or suffered in other litigation, thereby preventing double recovery.

41. Lucky has lost friends and community standing, is excluded from social gatherings, and has been cut off from other sources of community engagement due to the broad reputational damage, including that related to the integrity of his legal dealings.

42. Lucky is being treated by both a psychologist and psychiatrist, and has been diagnosed with severe depression and Post Traumatic Stress Disorder ("PTSD"), for which he takes psychotropic medication, consistent with the profound stress and fear caused by false accusations of criminal conduct. His PTSD symptoms include disassociation, avoidance, hypervigilance, sleep disturbance, and a persistent negative state.

43. Due to Defendants' actual malice, Lucky is also entitled to an award of punitive damages to punish Defendants and deter similar conduct in the future.

**COUNT II: INJUNCTIVE RELIEF**

44. Lucky incorporates all previous allegations as if fully rewritten herein.

45. Upon a finding that Defendants' statements as alleged herein are defamatory, Lucky is entitled to injunctive relief (a) requiring Defendants to retract their defamatory statements, and (b) prohibiting them from publicizing further defamatory statements about Lucky engaging in any criminal or wrongful conduct related to their defamatory statements that he impersonated a lawyer, is committing the unauthorized practice of law, or other similar statements.

46. Lucky asserts that such an injunctive relief would not violate the First Amendment to the United States Constitution and/or be a prior restraint on Defendants' speech because those rights do not allow them to make defamatory statements about Lucky.

47. Lucky requests the Court issue a permanent injunction restraining Defendants from publicizing such defamatory statements.

**JURY DEMAND**

48. Lucky demands a trial by jury on all matters so triable.



COUNXEL LEGAL FIRM

## PRAYER FOR RELIEF

**WHEREFORE,** Lucky requests that this Court enter a judgment in his favor and against Defendants, jointly and severally, for the following relief:

A. Compensatory damages in an amount to be determined at trial, but in excess of $75,000.00;

B. Punitive damages in an amount to be determined at trial and sufficient to punish Defendants and deter others from similar conduct;

C. Injunctive relief to require the Defendants to issue a public retraction of the defamatory comments and story, and prohibiting them from making false and defamatory statements about Lucky;

D. Pre- and post-judgment interest as allowed by law;

E. An award of attorney fees and costs; and

F. An award of all other relief deemed appropriate under the circumstances.

**RESPECTFULLY SUBMITTED** this 21st day of August, 2025.

**COUNXEL LEGAL FIRM**

*/s/ Andrew N. Morrow*
Andrew N. Morrow
2222 South Dobson Road, Suite 1104
Mesa, Arizona 85202
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on August 21, 2025, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF Registrant:

*/s/ Stacey King*

COUNXEL LEGAL FIRM