Steven B. Coffin, AZ SBN 038399
Steven.Coffin@solidcounsel.com
**SCHEEF & STONE, LLP**
2600 Network Boulevard, Suite 400
Frisco, Texas 75034
Phone: (214) 472-2100
Fax: (214) 472.2150

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lawrence Lucky, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>The Wartburg Watch, an unincorporated association, Darlene Parsons, an individual, Wanda Martin, an individual, and Todd Wilhelm, an individual,<br><br>*Defendants.* | Case No. 2:25-cv-03030-DWL<br><br>**DEFENDANT DARLENE PARSONS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) and (6)** |

TO THE HONORABLE DISTRICT JUDGE:

Defendant Darlene Parsons ("Mrs. Parsons") files this Motion to Dismiss pursuant to Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure because: (1) Mrs. Parsons has no affiliation with, nor directed any activity towards Arizona; (2) Plaintiff failed to allege any basis that Mrs. Parsons can be vicariously liable for defamation; and, alternatively, (3) the speech on which Plaintiff's defamation claim relies is protected by the First Amendment and is not actionable defamation. Accordingly, Mrs. Parsons requests that the Court dismiss Plaintiff's Complaint against her with prejudice, and without providing Plaintiff an opportunity to replead.

## I.   INTRODUCTION

1.   The freedom of speech and press are rights tantamount to this Country and have been for more than 200 years. Lawrence Lucky ("Plaintiff") is attempting to unravel centuries of legal authority protecting these rights by asking this Court to hold Mrs. Parsons

liable for defamation on the basis of a single statement contained in an article that was authored and published by a third party, Todd Wilhelm ("Mr. Wilhelm") on an online blog, the Wartburg Watch (the "Article").

2.      It is understandable why Plaintiff is unhappy with Mr. Wilhelm's blog article (the "Article")—it recounts multiple news reports published by The Kansas City Star detailing sexual misconduct allegations made against Plaintiff by underage boys that were affiliated with the youth group Plaintiff led at his church in Missouri. The Article, however, which was not authored by Mrs. Parsons, is not defamatory because it is protected speech under the First Amendment as an expression of opinion.

3.      But even if the Article is considered defamatory (which it is not), Plaintiff's Complaint fails to allege the basis of any cognizable legal theory under which Mrs. Parsons can be held vicariously liable for the publication of the Article. Plaintiff's conclusory allegation that Mr. Wilhelm and Mrs. Parsons had an agency relationship does not satisfy Plaintiff's pleading standard, and there are no facts that Plaintiff could allege that would satisfy this standard. Mrs. Parsons did not author or publish the Article, had no role in the Article's creation or dissemination, did not employ, supervise, or direct Mr. Wilhelm, and had no control over the content Mr. Wilhelm published to the Wartburg Watch, including the Article. Therefore, Plaintiff's Complaint should be dismissed as it pertains to Mrs. Parsons pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4.      More importantly though is that this Court does not have personal jurisdiction over Mrs. Parsons. Mrs. Parsons does not reside in Arizona, has no business in Arizona, and did not direct any activities towards Arizona. Moreover, Plaintiff's alleged injury occurred in Missouri, the state in which he lives. Thus, regardless of whether the Article is considered defamatory and whether Mrs. Parsons can be held vicariously liable, Plaintiff's Complaint must be dismissed as it pertains to Mrs. Parsons because she is not subject to this Court's jurisdiction.

/ / /

/ / /

## II.   FACTUAL ALLEGATIONS COMMON TO BOTH MOTIONS

5.      On March 18, 2024, Mr. Wilhelm, a co-defendant and the author and publisher of the Article, received what purported to be a cease-and-desist letter from Citron Law Group, PLLC ("Citron Law Group").[1] On April 9, 2024, Wilhelm received a second cease-and-desist letter from Citron Law Group.[2]

6.      The Letters were in response to a video Mr. Wilhelm shared on his X account of a woman explaining that her younger brothers were groomed by Plaintiff while he was employed by International House of Prayer-Kansas City ("IHOPKC"), a Missouri-based church.[3]

7.      In August 2024, Mr. Wilhelm published the Article on the Wartburg Watch.[4] Wilhelm included in the Article the weblinks and screenshots of the news outlets' stories on regarding Plaintiff.[5] Wilhelm also provides his commentary on his belief regarding the legitimacy of the Letters stating that he did not believe the Letters were written by an attorney and that based on his research, "pretending to be a lawyer to scare someone into compliance can be subject to both criminal and civil penalties."[6] A copy of the Article is attached hereto as Exhibit A.

8.      In support of his belief concerning the authenticity of the Letters, Wilhelm included pictures of the Letters in the Article and also provided the source from which he formed the belief that impersonating an attorney could subject the impersonator to criminal and civil penalties.[7]

9.      The only sentence in the entire Article that Plaintiff alleges is a "false and defamatory statement of fact" is:

> **I have reason to believe these [L]etters were not written by Beau Citron of the Citron Law Group. When researching**

---

[1] [Doc. 1] *Plaintiff's Original Complaint*, ¶¶ 6, 8, 22.
[2] The March 18, 2024, Letter and the April 9, 2024, Letter are referred to collectively as the "Letters."
[3] [Doc. 1] *Plaintiff's Original Complaint*, ¶ 19.
[4] *Id.*
[5] *See* Exhibit A, *Article*.
[6] [Doc. 1] *Plaintiff's Original Complaint*, ¶ 22; *see also* Exhibit A.
[7] *See* Exhibit A, *Article*, at 7-9.

**this matter [*sic*] I found that pretending to be a lawyer to scare someone into compliance can be subject to both criminal and civil penalties**."

(the "Statement"). [8]

10.     Although the Statement asserts no such thing, Plaintiff represents to this Court that the Statement "falsely asserts that Lucky is engaged in the criminal acts of forgery and/or impersonating a lawyer" and the "explicit reference to criminal and civil penalties…is accusing Lucky of concrete, unlawful conduct, not merely expressing a subjective viewpoint."[9]

11.     Plaintiff seeks to hold Mrs. Parsons liable for the damages he claims the Statement caused—however, Plaintiff's Complaint lacks any basis for doing so.

12.     In his Complaint, Plaintiff correctly alleges that Mrs. Parsons is a citizen of North Carolina.[10] Despite the Complaint being devoid of any facts concerning Mrs. Parsons' contacts with Arizona—for which she has none—Plaintiff alleges that this Court has personal jurisdiction over Mrs. Parsons because the Wartburg Watch "is accessible to and viewed by individuals in Arizona."[11]

13.     Plaintiff, also in a conclusory manner, states that Mrs. Parsons is liable for any damage caused by the Statement because she "individually, and/or jointly" acted with Mr. Wilhelm "in the publication and dissemination of the" Statement.[12] Plaintiff, however, does not allege how, when, or to what extent Mrs. Parsons participated, oversaw, monitored, approved, or otherwise acted in conjunction with Mr. Wilhelm in authoring or posting the Statement. Instead, Plaintiff alleges that Mrs. Parsons and Mr. Wilhelm had a collaborative relationship because Mrs. Parsons allowed Mr. Wilhelm to post commentary on the Wartburg Watch blog.[13]

/ / /

---

[8] [Doc. 1] *Plaintiff's Original Complaint*, ¶ 22.
[9] *Id.* at ¶ 23.
[10] *Id.* at ¶ 2.
[11] *Id.* at ¶ 7.
[12] *Id.* at ¶ 11.
[13] *Id.* at ¶ 18.

**PLAINTIFF'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)**

## I. LEGAL STANDARD

14.     The Court may dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(2) when it lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). As there is no federal statute governing personal jurisdiction in this case, Arizona law applies. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997). Arizona courts may exercise either general or specific personal jurisdiction over a non-resident defendant.

15.     "General jurisdiction subjects the defendant to suit on virtually any claim, '[e]ven when the cause of action does not arise out of or relate to the [defendant's] activities'" in Arizona. *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270 (Ariz. 1987) (internal citations omitted). General jurisdiction applies only when the defendant has "substantial" or "continuous and systematic" contacts with Arizona. *Id*. If the defendant is an individual, general jurisdiction exists in the forum that is the individual's domicile. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

16.     Specific personal jurisdiction exists over a non-resident defendant to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Cybersell, Inc*. 130 F.3d at 416. The due process test is satisfied if the following requirements are met: (1) the defendant purposefully directed activities to the forum state, thereby availing himself of the protections of that state's laws; (2) the claim arises out of or results from the defendant's Arizona-related activities; and (3) the exercise of jurisdiction would be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). It is the plaintiff's burden to establish that the first two prongs of the due process test are satisfied. *Id*. Only once the first two prongs are satisfied is the defendant required to show that the exercise of personal jurisdiction would be unreasonable. *Id*.

17.     When the defendant's motion to dismiss attacks the facts supporting the plaintiff's jurisdictional theory, the court is not confined to the allegations of the complaint but must decide the motion based on competent evidence.[14] *Data Disc, Inc.*, 557 F.2d at

---

[14] Attached hereto as Exhibit B in support is the affidavit of Mrs. Parsons.

1285. When the factual accounts of jurisdictional facts are disputed, the court may order an evidentiary hearing to address the jurisdictional issues and require the plaintiff to prove the existence of facts supporting jurisdiction over the defendant. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

## II. ARGUMENTS AND AUTHORITIES

### A. The Court lacks general personal jurisdiction over Mrs. Parsons because she is domiciled in North Carolina.

18.     Mrs. Parsons is subject to a court's general jurisdiction only in the state in which she is domiciled. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924. Plaintiff concedes in his Complaint that Mrs. Parsons is domiciled in North Carolina.[15]

19.     Mrs. Parsons is not a resident of Arizona, has no business dealings in Arizona, owns no property in Arizona, and does not otherwise have any connection to Arizona, nor does Plaintiff allege that Mrs. Parsons does[16] Accordingly, this Court does not have general jurisdiction over Mrs. Parsons.

### B. Mrs. Parsons is not subject to the Court's specific personal jurisdiction because she did not purposefully avail herself to Arizona.

20.     In an intentional tort case, the plaintiff satisfies the first prong of the due process test, the "purposeful availment" prong, when it is establishes that the defendant: (1) committed an intentional act, (2) expressly aimed at the forum; and (3) that caused harm that the defendant knew was likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

21.     ***Mrs. Parsons did not commit an intentional act.*** Plaintiff does not allege Mrs. Parsons committed any intentional act. Plaintiff, instead, merely alleges that Mrs. Parsons allowed Mr. Wilhelm an opportunity to post on the blog—which even Plaintiff concedes is based in North Carolina, nor Arizona.[17] Plaintiff's Complaint fails to allege any intentional act by Mrs. Parsons in relation to the publication of the Article. Plaintiff does not allege that

---

[15] [Doc. 1] *Plaintiff's Original Complaint*, ¶ 2.
[16] *See* Exhibit B, *Affidavit of Darlene Parsons*, at ¶
[17] [Doc. 1] *Plaintiff's Original Complaint*, ¶ 18.

Mrs. Parsons was responsible for, or had a duty to, screen Mr. Wilhelm's Article, received compensation from Mr. Wilhelm's Article, or otherwise directed or oversaw Mr. Wilhelm's authorship and publication of the Article.

22.     However, if Plaintiff had alleged as much, the evidence attached hereto establishes that Mrs. Parsons did not screen, oversee, or otherwise take part in Mr. Wilhelm's authorship or publication of the Article, and that Mrs. Parsons did not compensate Mr. Wilhelm for posting to the blog.[18] Therefore, to satisfy his burden to establish Mrs. Parsons committed an intentional act, Plaintiff must produce evidence that sufficiently rebuts Mrs. Parsons' evidence.

23.     ***Mrs. Parsons did not direct any act towards the forum.*** Assuming Plaintiff could establish that Mrs. Parsons committed an intentional act, Plaintiff must still prove that her intentional act was directed at Arizona. *Dole Food Co.*, 303 F.3d at 1111. But Plaintiff cannot do so, nor does he even allege as much.

24.     Instead, Plaintiff acknowledges that Mrs. Parsons is a citizen of <u>*North Carolina*</u>, that Plaintiff is a citizen of <u>*Missouri*</u>, that the subject of the Article concerned events that occurred while Plaintiff worked in <u>*Missouri*</u> and for a <u>*Missouri*</u>-based church, and that as a result of the Article, Plaintiff has suffered harm to his reputation in his community—which is in <u>*Missouri*</u>.[19] Plaintiff's sole allegation concerning Arizona is that the blog "is accessible to and viewed by individuals in Arizona."[20] Mrs. Parsons is not the blog nor did she author, publish, or oversee Mr. Wilhelm's publication of the Article.[21] Nor does Plaintiff allege any specific conduct that Mrs. Parsons engaged in that was directed to Arizona.

25.     Although Plaintiff alleges that the Article was accessible to individuals in Arizona, the fact that individuals in Arizona *could have* accessed or viewed the Article is insufficient to establish jurisdiction. Plaintiff must show that Mrs. Parsons received a benefit,

---

[18] *See* Exhibit B, *Affidavit of Darlene Parsons*, at ¶
[19] [Doc. 1] *Plaintiff's Original Complaint*, ¶¶ 1, 2, 13, 14, 19, 39.
[20] *Id.* ¶ 7.
[21] *See* Exhibit B, *Affidavit of Darlene Parsons*, at ¶

privilege, or protection from Arizona through marketing, advertising, or conducting business in Arizona. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997) (personal jurisdiction did not exist over non-resident defendant that operated a webpage accessible in Arizona but who did not target Arizona through the website). Not only can Plaintiff not prove that Mrs. Parsons directed activity towards Arizona, but Plaintiff's Complaint does not even allege she did so.

26.    ***No harm was caused in Arizona—even Plaintiff admits as much.*** Assuming Plaintiff could establish the first two elements of the purposeful availment prong, Plaintiff cannot prove that Mrs. Parsons likely knew harm would be caused in Arizona. Courts generally consider whether the defendant knew whether the plaintiff lived in the forum when determining this element. *See Xcentric Ventures, LLC v. Bird*, 683 F. Supp. 2d 1068, 1074–75 (D. Ariz. 2010) (even if the defendant knew the plaintiff lived in the forum, more must be shown to establish jurisdiction over a non-resident defendant when the claim at hand is internet-based defamation); *see also Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) (dismissal was proper for lack of jurisdiction when the defendant was unaware of the plaintiff's residence and the allegedly defamatory article did not contain reference to the forum).

27.    Here, and assuming Mrs. Parsons is vicariously liable for Mr. Wilhelm's Article, Mrs. Parsons had no knowledge of Plaintiff's residence and Plaintiff does not allege that she did. However, if she did, Plaintiff lives in Missouri, not Arizona, and according to Plaintiff's Complaint, Plaintiff suffered injury in Missouri, not Arizona.[22] Plaintiff merely alleged that his reputation may have been foreseeably harmed in Arizona, but failed to allege why, how, or in what way his reputation could potentially be harmed in Arizona.[23] In fact, Plaintiff does not describe in any capacity what connection he has to Arizona, if any.

28.    Therefore, even if Mrs. Parsons authored the Article (which she did not), published the Article (which she did not), and purposefully directed the Article and her

---

[22] [Doc. 1] *Plaintiff's Original Complaint*, ¶¶ 1, 39.
[23] *Id.* ¶ 7.

conduct towards Arizona (which she did not), Plaintiff still cannot satisfy the purposeful availment prong of the due process test because she had no basis to believe that Plaintiff, a Missouri resident, would suffer harm in Arizona, a forum to which Plaintiff has no connection. Accordingly, the exercise of personal jurisdiction by this Court over Mrs. Parsons would contravene the protections afforded to Mrs. Parsons by the United States Constitution and Plaintiff's Complaint should be dismissed as it pertains to Mrs. Parsons.

## PLAINTIFF'S RULE 12(b)(6) MOTION TO DISMISS

### I. LEGAL STANDARD

29.    A plaintiff does not satisfy the pleading standard under the Federal Rules of Civil Procedure by simply reciting the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). Instead, a plaintiff must state specific factual allegations that, if true, support a plausible claim for relief. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). If the complaint does not allege sufficient facts to support each element of a claim, the court must dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

30.    In ruling on a Rule 12(b)(6) motion, the Court should look only to the plaintiff's well-pleaded allegations and must not credit legal conclusions that are couched as factual allegations. *Ashcroft*, 556 U.S. at 678-79. Although the general rule is that the court should not consider material beyond the pleadings when ruling on a Rule 12(b)(6) motion, the court may consider extrinsic evidence not attached to the complaint if the complaint necessarily relies on the document. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1004 (9th Cir. 2018) (if a document is referenced multiple times in the complaint, but is not attached to the complaint, the court does not err by considering the document in ruling on a Rule 12(b)(6) motion).

31.    If the motion to dismiss is granted, it is in the Court's discretion whether to allow the plaintiff to attempt to cure the defect in its complaint by repleading. An opportunity to replead is not mandatory. Courts should not allow a plaintiff leave to amend its complaint and should dismiss the claim with prejudice when any proposed amendment to the complaint

would be futile. *Schuman v. Microchip Technology Incorporated*, (N.D. Cal. 2019) 372 F.Supp.3d 1054 (leave to amend is not appropriate when facts do not exist to cure defect in pleading).

## II. ARGUMENTS AND AUTHORITIES

### A. The Court should consider the Article in ruling on this Motion because it is the basis of Plaintiff's claim.

32.     Although Plaintiff did not attach a copy of the Article to his Complaint, as explained above, the Court should consider the Article in ruling on this Motion because Plaintiff's claim is wholly dependent on the Article and references the Article in nearly every paragraph of the Complaint. *See Khoja*, 899 F.3d at 1004. Accordingly, Mrs. Parsons attaches to this Motion as Exhibit A, a true and correct copy of the Article, and requests that the Court consider the Article in its determination of this Motion.

### B. Plaintiff does not state a claim for relief against Mrs. Parsons.

33.     Plaintiff seeks to hold Mrs. Parsons vicariously liable for defamation arising from the Statement authored and published by Mr. Wilhelm. In support of his vicarious liability theory, Plaintiff alleges only that Mr. Wilhelm, the Wartburg Watch, and Mrs. Parsons acted jointly in publishing and disseminating the Statement through their "collaborative relationship" which, according to Plaintiff, constitutes an agency relationship.[24] This is not enough.

34.     The fundamental tenets of agency theory require that an agent act on the principal's behalf and subject to the principal's control. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (agency not established when party failed to allege or show the alleged principal had the right to control the alleged agent). Plaintiff, however, does not allege that Mrs. Parsons is, or was, Mr. Wilhelm's principle or that Mr. Wilhelm was subject to Mrs. Parsons' control. He instead asserts that because Mr. Wilhelm and Mrs. Parsons have both authored and published commentary articles on the same blog that Mrs.

---

[24] *Id.* ¶¶ 11, 18.

Parsons is liable for Mr. Wilhelm's conduct. This is not the standard and has never been the standard.

35.     Plaintiff's Complaint therefore fails to state sufficient facts regarding the agency relationship Plaintiff alleges exists between Mr. Wilhelm and Mrs. Parsons. As a result, the Complaint fails to state a theory of vicarious liability under which Mrs. Parsons can be held liable for the alleged defamatory Statement and should be dismissed without the opportunity for Plaintiff to replead because no evidence exists now, or will exist in the future, that Mr. Wilhelm was subject to Mrs. Parsons' control or direction, and therefore any amendment to the Complaint would be futile.[25]

**C. Assuming Plaintiff properly alleged vicarious liability, Plaintiff's claim must still be dismissed because the Statement is protected speech under the First Amendment.**

36.     To survive a motion to dismiss a defamation claim, the plaintiff "must not only establish that the statements about which she complains are reasonably capable of sustaining a defamatory meaning, she must also show that they are not mere comment within the ambit of the First Amendment. *Knievel v. ESPN*, 393 F.3d 1068, 1073-74 (9th Cir. 2005) (cleaned up). The First Amendment safeguards for freedom of speech provide constitutional protection to statements of opinion on matters that do not contain or imply a provable factual assertion. *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir.1995). Thus, when it is clear that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise on a matter, the statement is not actionable. *Hosszu v. Barrett*, 202 F.Supp.3d 1101, 1105 (D. Ariz. 2016) *aff'd*, 716 Fed. Appx. 622 (9th Cir. 2017). If there is no assertion of objective fact, the claim is foreclosed by the First Amendment. *Id.*

37.     The Ninth Circuit uses a three-part test to determine whether a statement asserts an objective fact or is protected under the First Amendment: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that

---

[25] *See* Exhibit B, *Affidavit of Darlene Parsons*, at ¶

impression, and (3) whether the statement in question is susceptible of being proved true or false." *Id.*

38.    In *Hosszu*, Barrett, a popular sportswriter, published an article to a blog that implied Hosszu, a famous swimmer, was using performance-enhancing drugs because after she lost an event, she accused her competitor of doing so. *Id.* at 1106. Barrett's article concluded that in his experience "athletes that dope must convince themselves that their competition is doing it [because] that is the only thing that can validate crossing this line." *Hosszu*, 202 F.Supp.3d at 1106. Hosszu sued Barrett for defamation claiming that his article harmed her reputation and caused the public to hold her in contempt. Barrett's filed a Rule 12(b)(6) motion arguing that his article was not actionable defamation under the First Amendment when analyzed under the three-part test—the court agreed.

39.    Regarding the first factor, the general tenor of the entire work, the court found that the article was commentary, thus not actionable defamation, because it employed an informal writing style and was posted on a blog, "a form of media known for containing personal opinion and commentary." *Id.* at 1107 (internal citations omitted). The court was clear in this regard: statements made on blogs are less likely to be viewed as statements of fact and are protected because the format in which they are found is the type of article generally known to contain more opinionated writing than the typical news report. *Id.* (internal citations and quotations omitted).

40.    Although the court concluded that the second factor weighed against Barrett because he "intended his audience to seriously consider the question he was raising— whether Hosszu might be having her performance with drugs," the court gave no weight to this factor in determining that the article was protected speech. *Id.*

41.    The court's analysis of the third factor, whether the statement could be proven true or not, turned on whether Barrett's statements offered his personal perspective about the ambiguities and disputed facts discussed in his article. *Id.* at 1108. In holding that Barrett's article was protected by the First Amendment, the court considered that: (a) the

article never stated Hosszu used performance-enhancing drugs; and (b) the article only "clearly implied" that Barrett believes that Hosszu's performance indicate such use. *Id.*

42.    To be held vicariously liable for Mr. Wilhelm's Statement, the Statement must not be protected by the First Amendment—but it is.

43.    ***The first factor weighs in favor of protected speech.*** The Statement is not actionable defamation because the general tenor of the Article negates the impression that Mr. Wilhelm was asserting an objective fact. The Article employed a highly informal writing style, was authored as a blog post, and was published to a blog—a form of media known for containing opinionated writings and personal perspectives. *See Hosszu*, 202 F.Supp.3d at 1106. Even considering only the Statement itself, the plain text of the Statement makes it clear that Mr. Wilhelm is expressing his personal opinion that the Letters were not written by an attorney based on the manner in which the Letters were authored and delivered to Mr. Wilhelm (e.g., without proper identifiers, lack of addresses, lack of phone numbers, no return address associated with the firm that purportedly sent the Letters, and no responsive deadline).[26]

44.    Moreover, Mr. Wilhelm explained in the Article that its contents were his opinions and provided in the Article his reasoning and the sources from which he gained his opinions. For instance, Mr. Wilhelm explained that his belief that "pretending to be a lawyer to scare someone into compliance can be subject to both criminal and civil penalties" arose from another post authored by a licensed attorney.[27]

45.    ***The second factor is immaterial.*** Mrs. Parsons does not contest that the Article did not include hyperbolic or figurative speech. However, as illustrated by the *Hosszu* court, this is immaterial to the determination of whether the Statement is actionable defamation.

46.    ***The third factor weighs in favor of the Statement being protected speech.*** Plaintiff contends that the Statement can be proven true or false and is therefore defamatory—but it cannot be because it is Mr. Wilhelm's personal opinion. Again, the

---

[26] *See* Exhibit A.
[27] *See Id.*

Statement Plaintiff complains of is that Mr. Wilhelm "believe[d] the Letters were not written by Beau Citron of the Citron Law Group [and] when researching this matter [he] found that pretending to be a lawyer to scare someone into compliance can be subject to both criminal and civil penalties."[28] The Statement merely recited Mr. Wilhelm's personal perspective and belief that the Letters were not sent by Beau Citron because of the manner in which the Letters were authored. Mr. Wilhelm inserted pictures of the Letters into the Article which indicate why Mr. Wilhelm held that belief: because the Letters did not include an email address for Citron Law Group or Beau Citron, a physical address, phone numbers, fax numbers, or an attorney State Bar number for Mr. Citron, and were written in a manner Mr. Wilhelm expected an attorney to write.

47.    Mr. Wilhelm's opinions and belief for why the Letters were questionable are also held by others. In fact, two people commented on the Article stating: "the fact there is no contact info [on the Letter] is my first red flag that this is not an official letter."[29] Another person commented that it "sounds like this letter is an attempt to bully and silence."[30] Accordingly, the allegations of the Complaint, including the Letters incorporated therein prove that the Statement is Mr. Wilhelm's personal opinion and is therefore not susceptible of being proven true or false. *See Hosszu*, 202 F.Supp.3d at 1108 (personal opinions, even those that imply wrongdoing, are protected by the First Amendment). Accordingly, the Court must dismiss the Complaint in its entirety because the Article is protected speech under the First Amendment and cannot be the basis for a defamation claim.

**C. Even if the Statement is not protected under the First Amendment, Plaintiff's claim fails because the Statement does not constitute defamation.**

48.    To prevail on his defamation claim Plaintiff must prove that the Statement: (a) is false; (b) was published to third persons; and (c) tends to harm Plaintiff's reputation. *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 341 (1989). Additionally, to be actionable as a matter of law, a defamatory statement "must be published in such a manner

---

[28] [Doc. 1] *Plaintiff's Original Complaint*, ¶ 22.
[29] *See* Exhibit A.
[30] *Id.*

that [it] reasonably relates to a specific individual." *Rosenblatt v. Baer*, 383 U.S. 75, 78 (1966).

49.  Mrs. Parsons does not dispute that the Statement was published to third persons. However, the Statement is not false, nor does Plaintiff's Complaint make any allegation that the Statement is false. Rather, Plaintiff's Complaint asserts a conclusory legal contention that the Statement "implies" Plaintiff engaged in the wrongful act of impersonating a lawyer. But the Statement says no such thing.

50.  The Statement merely states that Mr. Wilhelm believes the Letters were not sent by the Citron Law Group, and if someone does impersonate an attorney that there may be potential penalties for doing so. The Statement and the remaining portions of the Article do not identify, accuse, or state that Plaintiff sent the Letters or is the person that Mr. Wilhelm believes sent the Letters.[31] The Statement also does not threaten to take any action against Plaintiff, or any other person, for impersonating an attorney. The Statement is therefore not actionable, and the Complaint should be dismissed, because it: (a) is not false, and (b) does not specify or refer to Plaintiff.

### CONCLUSION

51.  It is an elementary principle of the law that a person may be hauled into a court only in a forum in which the person has sufficient contacts. Mrs. Parsons has had no contact, and has not directed any activity, towards Arizona and therefore this Court lacks personal jurisdiction over Mrs. Parsons. For that reason, Plaintiff's Complaint must be dismissed as it pertains to Mrs. Parsons. Alternatively, Mrs. Parsons requests that the Court set an evidentiary hearing on this matter to determine whether this Court may properly exercise jurisdiction over Mrs. Parsons.

52.  However, if the Court is inclined to exercise personal jurisdiction over Mrs. Parsons, the Complaint must still be dismissed as it relates to Mrs. Parsons because the Complaint fails to allege any facts on which Mrs. Parsons could be held vicariously liable for Mr. Wilhelm's Statement. Further in the alternative, if this Court determines there is

---

[31] *See* Exhibit A.

jurisdiction over Mrs. Parsons, and the Complaint does allege sufficient facts concerning Mrs. Parsons alleged vicarious liability, the Complaint must be dismissed in its entirety, and without an opportunity to replead because: (a) the Statement is protected speech under the First Amendment; or (b) the Statement is not actionable defamation because it does not specifically identify or refer to Plaintiff.

DATED this 24th day of September, 2025.

**SCHEEF & STONE LLP**

By: */s/ Steven B. Coffin*
Steven B. Coffin
*Attorney for Defendant Todd Wilhelm*

**CERTIFICATE OF CONFERENCE**

Pursuant to the Court's Preliminary Order [Doc 12] and Local Rule 12.1(c), I, Steven B. Coffin, certify that on September 23, 2025, conferred with counsel for Plaintiff regarding the matters set forth in the above document and that counsel for the respective parties were unable to agree that Plaintiff's Complaint was curable or to the relief sought herein.

*/s/ Steven B. Coffin*
Steven B. Coffin

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2025, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to all counsel of record.

*/s/ Steven B. Coffin*
Steven B. Coffin